United States District Court
Southern District of Texas
**ENTERED**
October 25, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAMERON INTERNATIONAL CORPORATION, § § | | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-16-2117 |
| STEVEN ABBISS, | § § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This case is before the Court for determination of the reasonable scope of restrictive covenants in Restricted Stock Unit Award Agreements (collectively, the "Agreement") between Plaintiff Cameron International Corporation ("Cameron") and Defendant Steven Abbiss in 2013, 2014, 2015 and 2016.[1] Also pending is Cameron's request for a preliminary injunction prohibiting Abbiss from disclosing confidential information acquired while he was employed by Cameron, participating in any bids for surface systems products, services or technologies in the Middle East, rendering any services to FMC Technologies Singapore PTE, Ltd. ("FMC") or any other competitor of Cameron in the Middle East, and soliciting Cameron employees to leave

---

[1] The 2013 Agreement is Plaintiff's Hearing Exhibit 6 [Doc. # 70-2]. The 2014 Agreement is Plaintiff's Hearing Exhibit 8 [Doc. # 70-4]. The 2015 Agreement is Plaintiff's Hearing Exhibit 10 [Doc. # 70-6]. The 2016 Agreement is Plaintiff's Hearing Exhibit 16 [Doc. # 70-8]. The four Agreements are substantially the same, and any relevant differences will be noted where necessary.

Cameron's employ. The Court conducted an evidentiary hearing on October 18, 2016. Based on the evidence presented at the hearing, the agreed supplemental deposition testimony, and the Court's review of the full record and applicable legal authorities, the Court issues the following findings of fact and conclusions of law. The Court determines the scope of the Agreements, and denies Cameron's request for a preliminary injunction.

### I. BACKGROUND

Abbiss began working for Cameron in 1990. From 2010 to 2014, Abbiss was Regional Manager for Asia, stationed in Singapore. Beginning January 1, 2014, Abbiss was District Manager in Oman. Abbiss resigned his position with Cameron on May 1, 2016. In June 2016, Abbiss began working for FMC, a direct competitor of Cameron, as its General Manager for the Middle East.

Between 2013 and 2016, in connection with his employment with Cameron, Abbiss was awarded restricted Cameron stock pursuant to annual Restricted Stock Unit Award Agreements that contained a "Covenant Not to Compete, Solicit or Disclose Confidential Information." Pursuant to ¶ 9 of the 2013, 2014, and 2015 Agreements and ¶ 8 of the 2016 Agreement, Abbiss is precluded for a period of one year following his resignation from Cameron from engaging in "Detrimental Activity." "Detrimental Activity" is defined under the Agreement to include

(a) "rendering of services for any person or organization, or engaging directly or indirectly in any business, which is or becomes competitive with [Cameron] or any Subsidiary" ("Non-Compete Provision"); (b) disclosing confidential information; (c) inducing any Cameron employee to leave Cameron's employ; and (d) "directly or indirectly soliciting the trade or business of any customer of [Cameron] or any Subsidiary" ("Non-Solicitation Provision"). The four annual Agreements are largely the same in these material respects.

Abbiss left Cameron's employ to work for FMC on May 1, 2016. Cameron filed this lawsuit on July 18, 2016, alleging that Abbiss breached the 2014, 2015 and 2016 Agreements and tortiously interfered with Cameron's contractual relationships. Cameron later filed a First Amended Complaint [Doc. # 47], adding the 2013 Agreement to the breach of contract claim and abandoning the claims for tortious interference with contractual relationships.

Abbiss filed a Motion for Summary Judgment, asserting that the Non-Compete and Non-Solicitation Provisions were unenforceable as overly-broad. In a Memorandum and Order [Doc. # 49] issued September 27, 2016, the Court agreed that the restrictive covenants are unenforceable as written. The Court held also that, under Delaware law, the Court can enforce the restrictive covenants to the extent

reasonable.[2] The Court deferred ruling on the reasonable scope of the restrictive covenants until it could consider the evidence presented at the October 18, 2016, hearing.

Cameron requested a preliminary and a permanent injunction precluding Abbiss from soliciting Cameron's customers or otherwise competing with Cameron in Oman, Yemen, Saudi Arabia, Bahrain, United Arab Emirates, Kuwait, Qatar, Iraq, and Iran. *See* Amended Memorandum in Support of Motion for Temporary Restraining Order, Preliminary Injunction, and Request for Permanent Injunction [Doc. # 41], pp. 31-32. The preliminary injunction request has been fully briefed, the Court has received testimony and documentary evidence, and the matter is now ripe for decision.

## II.     REASONABLE SCOPE AND DURATION OF AGREEMENT

In the prior Memorandum and Order, the Court held that the restrictive covenants in each of the four Agreements are unenforceable as written. Because Delaware law provides that the Court can enforce an overly-broad restrictive covenant to a reasonable extent, the Court deferred ruling on the reasonable scope of the

---

[2] The 2013 Agreement contains a choice of law provision requiring all issues regarding "the validity, construction and effect of this Award Agreement" to be governed by Delaware Law. *See* 2013 Agreement, ¶ 19. The 2014 and 2015 Agreements contain this same choice of law provision, and also provide that any "dispute concerning this Agreement will be resolved exclusively in the state or federal courts in Harris County, Texas" and a consent to the venue and jurisdiction of such courts. *See* 2014 and 2015 Agreements, ¶ 19.

restrictive covenants until it could consider the evidence presented at the preliminary injunction hearing on October 18, 2016. Additionally, to conduct the preliminary injunction analysis, the Court must first determine which restrictive covenants in which Agreement(s) apply, and must then determine the reasonable scope and duration of the applicable restrictive covenants.

### A. **Applicable Agreements**

*2013 Agreement.*– The 2013 Agreement is dated January 1, 2013. On that date, Abbiss was Cameron's Regional Manager for Asia. In that position, Abbiss was responsible for overseeing Cameron's operations in several Asian countries, and the district managers for those countries reported to him. Abbiss reported to Cameron's Vice President, Sandy Ewen.

Effective January 1, 2014, Cameron changed Abbiss's title to District Manager for Oman. In that position, Abbiss was responsible for Cameron's sales operations in Oman and in Yemen. Instead of reporting to Vice President Ewen, Abbiss reported to a General Manager. Abbiss no longer had profit and loss responsibilities.

The 2013 Agreement provides that "with respect to . . . termination following a reduction in job responsibilities" the only restriction is the one prohibiting disclosure of confidential information. *See* 2013 Agreement, ¶ 9(b). At the end of 2013, Abbiss's position changed resulting in a reduction in his job responsibilities. The

voluntary termination of his employment with Cameron in 2016 followed that reduction in job responsibilities and, therefore, the 2013 Agreement precludes only disclosure of confidential information. The Non-Compete and Non-Solicitation Provisions at issue in this case are inapplicable under the 2013 Agreement.

*2014 and 2015 Agreements.–* The 2014 Agreement is dated January 1, 2014. That date was the first day Abbiss was in the District Manager for Oman position. The 2015 Agreement is dated January 1, 2015. On that date, Abbiss was still in the District Manager for Oman position. During the term of these two Agreements, there was no reduction in Abbiss's job responsibilities. As a result, all four restrictive covenants in these two Agreements, including the Non-Compete and Non-Solicitation Provisions, apply with the reasonable limitations discussed below.

*2016 Agreement.–* The 2016 Agreement is dated January 1, 2016. It is undisputed that the stock award on which this Agreement is based did not vest because Abbiss resigned his employment with Cameron prior to the vesting date, and his resignation did not satisfy any of the other vesting provisions. As a result, the restrictive covenants in the 2016 Agreement are unenforceable for lack of consideration. *See, e.g., Haft v. Dart Group Corp.*, 841 F. Supp. 549, 573, n.30 (D. Del. 1993) (citing *Hensel v. U.S. Elec. Corp.*, 262 A.2d 648, 651 (Del. 1970)).

## B.     Scope of Enforceable Restrictive Covenants

Under Delaware law, "for a non-compete clause to be enforceable, it must (1) be reasonable in geographic scope and temporal duration, (2) advance a legitimate economic interest of the party seeking its enforcement, and (3) survive a balancing of the equities." *Avaya, Inc. v. Ali*, 2012 WL 2888474, *7 (D. Mass. July 13, 2012).

***Geographic Scope and Duration***.–   As to the first factor, the restrictive covenants in the 2014 and 2015 Agreements are in effect for one year after Abbiss's employment with Cameron ended. This is a reasonable time limit under Delaware law. *See, e.g., Research & Trading Corp. v. Pfuhl*, 1992 WL 345465, *11 (Del. Ch. Nov. 18, 1992). Indeed, neither party disputes the reasonableness of the one-year time limitation. Abbiss resigned his employment with Cameron on May 1, 2016. As a result, the restrictive covenants in the Agreements expire on May 1, 2017.

With reference to the requirement that the restrictive covenant be reasonable in geographic scope, a "non-competition agreement will only be enforced over a geographic area that is reasonable under the circumstances." *Pfuhl*, 1992 WL 345465 at *11. Global restrictive covenants are often permitted when the restriction only prohibits solicitation of customers with whom the employee dealt on behalf of the employer and, therefore, are self-limiting. *See, e.g., Sentient Jet, LLC v. Early*, 2013 WL 6210643, *3 (D. Mass. Sept. 11, 2013) (applying Delaware law) (permitting

restrictive covenant covering broad geographic area because "its scope is limited to only those with whom Early had 'material contact' during the last twelve months of his employment," thus enabling "Early to readily identify the entities at issue and the scope of the restriction"). Also, a nationwide or global restriction may be enforceable where "the employee would *gain from the employment* some advantage in any part of that market." *Pfuhl*, 1992 WL 345465 at *12 (emphasis in original).

In this case, during the final two years of Abbiss's employment with Cameron, he had responsibility only for Oman and Yemen.[3] Cameron argues that Abbiss had confidential information from a meeting he attended in Singapore in February 2016 that related to the entire Middle East region. The Court finds from the evidence in the record that Abbiss was given no written materials at the meeting. Moreover, the evidence establishes that the information provided at the February 2016 meeting was generic, much of which was publicly available and/or disclosed to Cameron employees who were not covered by restrictive covenants. Therefore, the February 2016 meeting does not support expanding the geographic scope of the restrictive covenants beyond Abbiss's actual areas of responsibility. The Court finds that the reasonable geographic scope of the Non-Compete and Non-Solicitation Provisions in the 2014 and 2015 Agreements is Oman and Yemen.

---

[3] It is undisputed that Abbiss's responsibility for Yemen ended in May 2015.

*Scope of Restriction of Responsibilities*.– The restrictive covenant must advance the company's legitimate economic interest, such as the protection of the employer's goodwill and the protection of its confidential information from improper use. *See Radian Guar. Inc. v. Bolen*, 2014 WL 2777450, \*6 (E.D. Pa. June 19, 2014) (applying Delaware law). Eliminating competition is not, however, a legitimate business interest. *Id.* To protect an employer's goodwill, courts have enforced restrictive covenants precluding "former employees from dealing with the customers of their former employers with whom the employee had contact." *Id.* In this case, the Court finds that a reasonable scope of activities within the Non-Compete and Non-Solicitation Provisions in the 2014 and 2015 Agreements is any activity that competes with Cameron's business in Oman and Yemen.

*Equities*.– A balance of the equities supports the Court's ruling that the 2014 and 2015 Agreements restrict Abbiss from engaging in activities that compete with Cameron's operations in Oman and Yemen. Cameron's witnesses acknowledge that the goal of broad enforcement of the Non-Compete Provision in countries other than Oman and Yemen, where Abbiss has not had responsibility, is to prevent his new employer, FMC, from competing or expanding market share in those countries. Extending the geographic scope of the restrictive covenants throughout the entire Middle East, including Iraq and Iran, as Cameron requests, would prevent Abbiss

from working in the region and would require him and his family to relocate to another part of the world. This would be extremely disruptive, especially to one of his daughters who is in a significant year of her schooling during which important final tests are conducted. Because there is little, if any, prejudice to Cameron from Abbiss working in the Middle East, with the exception of Oman and Yemen, the significant prejudice to Abbiss and his family from precluding his employment in the entire Middle East region outweighs the limited prejudice to Cameron.

The Court holds that, under Delaware law, the Non-Compete and Non-Solicitation Provisions of the 2014 and 2015 Agreements are enforceable for one year after Abbiss resigned his employment with Cameron on May 1, 2016, and are enforceable to restrict Abbiss's activities that compete with Cameron's operations in Oman and Yemen.

### III.   PRELIMINARY INJUNCTION ANALYSIS

#### A.   Preliminary Injunction Standard

In order to obtain a preliminary injunction, the movant must demonstrate the following: "(1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public

interest." *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009); *see also Allstate Settlement Corp. v. Doucette*, 2015 WL 2091767, *1 (S.D. Tex. May 5, 2015) (Miller, J.). A preliminary injunction is an extraordinary remedy that requires an unequivocal showing that injunctive relief is necessary. *See Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). As a result, a preliminary injunction should be issued only if the movant has "clearly carried the burden of persuasion." *Bluefield Water*, 577 F.3d at 252-53.

### B. Substantial Likelihood of Success on the Merits

Cameron's only claim in this case is for breach of contract. "The essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach." *CCC Grp., Inc. v. S. Cent. Cement, Ltd.*, 450 S.W.3d 191, 196 (Tex. App. – Houston [1st Dist.] 2014, no pet.); *see also Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009). As discussed above, the 2013, 2014 and 2015 Agreements are valid contracts. There is no dispute that Cameron performed its obligations under the three Agreements by providing the stock awards to Abbiss.

Cameron has failed, however, to present evidence that Abbiss has breached the terms of the 2013, 2014 and/or 2015 Agreements to the extent the Court has limited

their scope to what is reasonable. The Court finds from the evidence in the record that Abbiss did not remove any confidential documents, either tangible or electronic, when he left Cameron. The Court finds also that Cameron has not established that Abbiss has disclosed, inadvertently or otherwise, any confidential information he acquired while employed at Cameron. Most, if not all, of the information presented at Cameron's February 2016 conference and the materials to which Abbiss had access in the last couple of years of his employment with Cameron were not confidential and/or are stale. Coupled with the political and business realities in the United States and the Middle East, as described at the hearing, the Court finds that Abbiss is not likely to breach his contractual obligations to Cameron between now and May 1, 2017.[4]

With respect to the 2014 and 2015 Agreements, Abbiss has not and is not now engaged in activities that compete with Cameron's operations in Oman or Yemen. He has no responsibility for FMC's operations in those two countries and there is no evidence that he has solicited business from customers in either country. There is no evidence that Abbiss has attempted to induce Cameron employees to resign their employment with Cameron to work for FMC. As a result, Cameron has failed to

---

[4] To the extent Cameron relies on the argument that Abbiss's disclosure of its confidential information during his employment with FMC is inevitable, it is noted that the "inevitable disclosure" doctrine is not recognized in Texas. *See Cardoni v. Prosperity Bank*, 805 F.3d 573, 589-90 (5th Cir. 2015), and cases cited therein.

demonstrate a substantial likelihood that it will prevail on its breach of contract claim. This failure weighs heavily against issuance of a preliminary injunction.

### C. Threat of Irreparable Harm to Plaintiff

The 2015 Agreement recognizes the "immediate and irreparable damage that *could* be caused" to Cameron if the restrictive covenants are violated. *See* 2015 Agreement, Plaintiff's Hearing Exh. 10, ¶ 9(c) (emphasis added). Except for this provision in the 2015 Agreement, Cameron has not demonstrated a substantial threat of irreparable harm if a preliminary injunction is not issued. In any event, there is no evidence that Abbiss is engaging or intends to engage in activities that compete with Cameron in Oman and/or Yemen, and the Court finds from the evidence that he is not. The confidential information Abbiss obtained regarding preparation of bids for work in other countries in the Middle East is now more than six-months old and likely is stale. There is no evidence that Abbiss is likely to disclose any of Cameron's confidential information or solicit its employees between now and May 1, 2017. As a result, consideration of this factor in the preliminary injunction analysis weighs against issuance of the injunction.

### D. Whether Threatened Harm Outweighs Injury to Defendant

As noted above, there is no evidence that Abbiss is engaging or plans to engage in activities at FMC that are in competition with Cameron's business in Oman or

Yemen. As a result, there is no indication that Abbiss would be prejudiced by a preliminary injunction prohibiting him from doing what he is not doing. A preliminary injunction in this case would neither benefit Cameron nor prejudice Abbiss.

### E. Public Interest

Non-compete clauses are disfavored in Texas as a restraint on business, but enforcing reasonable non-competes is not against the public interest. *See, e.g., Sirius Computer Sols., Inc. v. Sparks*, 138 F. Supp. 3d 821, 843 (W.D. Tex. 2015); *Alliantgroup, L.P. v. Feingold*, 2009 WL 1357209, *2 (S.D. Tex. May 11, 2009) (Rosenthal, J.).

### F. Conclusion on Preliminary Injunction

Cameron has not met its high burden to demonstrate that a preliminary injunction should be issued in this case. Significantly, Cameron has failed to demonstrate a substantial likelihood of success on the merits of its breach of contract claim. Additionally, except for the provision in ¶ 9(c) of the 2015 Agreement acknowledging that irreparable harm "could" occur, there is no evidence that Cameron is likely to suffer irreparable harm between now and May 1, 2017, if an injunction does not issue. As a result, based on the full record in this case, the Court denies Cameron's request for a preliminary injunction.

## IV.    CONCLUSION

Based on the foregoing, the Court defines the reasonable duration of the restrictive covenants to be one year from May 1, 2016, the date Abbiss resigned his employment with Cameron.  The reasonable scope of the restrictive covenants would prevent Abbiss from engaging in activities that compete with Cameron in Oman and Yemen, the countries for which Abbiss had responsibility at the time of, or within the year before, his resignation.

Cameron has failed to demonstrate entitlement to a preliminary injunction.  As a result, it is hereby

**ORDERED** that Cameron's request for a preliminary injunction is **DENIED**.  The Court notes that its ruling is based on Abbiss's acknowledgment that he cannot disclose confidential information he obtained while employed by Cameron and cannot solicit Cameron's employees to leave Cameron to work for FMC.  The denial of a preliminary injunction is based also on the scope of Abbiss's current position with FMC, which specifically excludes involvement in FMC operations in Oman.  It is further

**ORDERED** that counsel shall appear before the Court on **November 14, 2016, at 3:00 p.m.** for a status and scheduling conference.

SIGNED at Houston, Texas, this **25th** day of **October, 2016**.

*[Signature]*

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE